## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SCOTT, | ) | Case No.1:19-cv-2393 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Ronald Scott applied for supplemental security income, and the Commissioner denied his application.  Mr. Scott appealed, and the Magistrate Judge recommended remand to the agency to allow further consideration of and more fulsome explanations for certain issues.  The Commissioner objects (ECF No. 19) to the Magistrate Judge's Report and Recommendation (ECF No. 18).  For the reasons that follow, the Court **SUSTAINS** the objections, **VACATES** the Report and Recommendation, and **AFFIRMS** the Commissioner's decision denying Plaintiff Ronald Scott's application for supplemental security income.

## STATEMENT OF FACTS

Mr. Scott first applied for supplemental security income on June 13, 2012, alleging a disability onset date of April 1, 2013.  (ECF No. 11, PageID #68.)  That application was denied at every stage of the proceedings.  (*Id.*, PageID #69.)  The administrative law judge finalized the denial on May 29, 2015.  (*Id.*)  Although his first application is not before this Court, the State reviewers and ALJ in this case

adopted certain findings regarding Mr. Scott's Residual Functional Capacity ("RFC") from his previous application.

Mr. Scott again applied for SSI benefits on June 29, 2016, alleging a disability onset date of May 30, 2015, claiming he was disabled due to psychological issues stemming from previous prison attacks and hereditary arthritis in his lower spine. (*Id.*)  The Commissioner denied the application initially and after reconsideration. Mr. Scott subsequently requested a hearing before an administrative law judge.

## A.     Summary of the ALJ's Findings

Mr. Scott, represented by counsel, and an impartial vocational expert testified at a hearing before the ALJ on March 21, 2018.  The ALJ issued a decision on October 26, 2018, finding Mr. Scott is not disabled within the meaning of the Social Security Act and denied his application.  After considering the evidence presented, the ALJ conducted the familiar five-step analysis set forth in 20 C.F.R. § 404.1520(a)(4) and determined that Mr. Scott is not disabled.  (ECF No. 11, PageID #71–85, 87.)

First, the ALJ found Mr. Scott "has not engaged in substantial gainful activity since June 29, 2016, the application date."  (*Id.*, PageID #71.)  Second, the ALJ determined Mr. Scott had several severe impairments, including:  "spine disorders, congestive heart failure, obesity, other diseases of the circulatory system, affective disorders, anxiety disorders and alcohol/substance addiction disorders." (*Id.*, PageID #72.)  The ALJ also identified Mr. Scott's right carpal tunnel syndrome and left rotator cuff tendinopathy to be non-severe impairments.  (*Id.*)  The ALJ noted that x-rays did not show evidence of fracture or dislocation and that an electromyogram revealed only "mild" right carpal tunnel syndrome.  (*Id.*, PageID #73.)  Further, the

2

ALJ observed that the record did not reveal "an aggressive course of treatment for these conditions," but instead a "conservative course of treatment of wrist splinting for carpal tunnel syndrome and recommended physical therapy for the left shoulder." (*Id.*)

Third, the ALJ determined none of the impairments met the criteria for Mr. Scott to be presumed disabled without further inquiry. (ECF No. 11, PageID #73–77.) Before proceeding to the fourth step, the ALJ found Mr. Scott had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), subject to the following exceptions:

> The claimant can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The claimant can stand and walk 6 hours of an 8-hour workday and sit for 6 hours of an 8-hour workday. The claimant has unlimited push and pull other than shown for life and/or carry. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to extreme cold and extreme heat. The claimant must avoid concentrated exposure to vibration. The claimant cannot perform overhead lifting with the upper extremity. The claimant can perform simple routine tasks (unskilled work) with no fast pace or high production quotas. The claimant can have superficial interaction with others (meaning of a short duration for a specific purpose.) Requires use of cane for ambulation.

(*Id.*, PageID #77–78.) The ALJ noted that "new and material evidence" since his prior application revealed "that the claimant requires use of a cane for ambulation." (*Id.*, PageID #79.) Otherwise, the ALJ adopted the previously assessed residual functional capacity without specifically mentioning Mr. Scott's carpal tunnel syndrome or left rotator cuff tendinopathy. The ALJ did, however, reference the evidence in the second

finding, which mentioned those two limitations and explained why she did not consider them severe.

Moving to step four, the ALJ determined Mr. Scott "has no past relevant work." (*Id.*, PageID #85.)  Finally, at the fifth step, the ALJ found Mr. Scott could perform jobs that exist in significant numbers in the national economy.  (*Id.*)  Possible jobs included mail clerk, office helper, or information clerk.  (*Id.*, PageID #86.)  Therefore, the ALJ concluded Mr. Scott is not disabled.  (*Id.*, PageID #87.)

### B.    Relevant Opinion Evidence

Among other evidence in the record, including the medical records and Mr. Scott's testimony, the ALJ considered opinion evidence from multiple sources to inform her decision.  (*Id.*, PageID #83–85.)  Relevant to the Commissioner's objections are the opinions of (1) Dr. Antwon Morton and Dr. Jason Dancy; (2) Counselor Benjamin Rubin, MSL, LISW; and (3) State reviewers Dr. Kathleen Malloy, Ph.D. and Dr. Courtney Zeune, Psy.D.

### B.1.    Drs. Morton and Dancy

Mr. Scott underwent a functional capacity evaluation with Dr. Morton on March 2, 2015.  (ECF No. 11, PageID #350–52.)  Dr. Morton reported that Mr. Scott had moderate functional limitations such that he could lift and carry up to 10 pounds at the waist level frequently, but should avoid repetitive stooping or bending and lifting from the floor.  (*Id.*, PageID #352.)  Further, he could stand for only three to four hours a day at 40-minute intervals.  (*Id.*)  Dr. Morton concluded that Mr. Scott "could work at a sedentary level," but that such work "would prove difficult."  (*Id.*)

He also noted Mr. Scott could "ambulate without devices, and perform activities of daily living at a Modified Independent level." (*Id.*, PageID #351.)

Just over two years later, on February 3, 2017, Mr. Scott underwent another functional capacity assessment with Dr. Morton and Dr. Jason Dancy, a fourth-year resident physician under Dr. Morton. (*Id.*, PageID #1079–84.) It appears the second assessment report was jointly authored by both doctors, but the ALJ appears to have thought only Dr. Dancy authored it. (*Id.*, PageID #83.)

The 2017 assessment resulted in similar findings to those of the 2015 report. The doctors opined that Mr. Scott is able to lift and carry up to 10 pounds at the waist level frequently, should avoid lifting from the floor, squatting, or crawling, and can stand for a maximum of 15-minute intervals for a maximum of three to four hours per day. (*Id.*, PageID #1083.) They concluded he could work at a sedentary level, although such work would prove difficult. (*Id.*)

The ALJ gave partial weight to the March 2015 and February 2017 assessments by Drs. Morton and Dancy. (*Id.*, PageID #83.) She found the opinions "internally inconsistent and not objectively supported." (*Id.*) As to inconsistency, the ALJ noted "both doctors opined the claimant could work at the sedentary level, but gave limitations for work activity consistent with less than a full range of the sedentary exertional level." (*Id.*) She found the opinions were not objectively supported because, while the limitations the doctors identified were consistent with Mr. Scott's self-reporting at the hearing, the two assessments "otherwise revealed

5

normal strength, intact sensation, symmetrical reflexes, and no noted motor deficits."
(*Id.*)

### B.2.   Counselor Rubin

In January 2015, Mr. Scott began attending group psychotherapy with Counselor Benjamin Rubin, MSL, LISW.  (*Id.*, PageID #1387.)  He started seeing Rubin on an individual basis in April 2016.  (*Id.*)  Mr. Scott was diagnosed with post-traumatic stress disorder and recurrent major depressive disorder sometime before December 2017.  (*Id.*)  The record includes three opinions by Rubin.

First, in an undated letter to Mr. Scott's counsel, Rubin opined that Mr. Scott would have difficulty functioning in the work setting due to his mental health symptoms.  (*Id.*)  The ALJ assigned the letter limited weight, (*id.*, PageID #85), and the Magistrate Judge found her explanation for doing so to be clear.  ([ECF No. 18](), PageID #1523.)

Rubin's second and third opinions came in 2 two-page checkbox forms assessing Mr. Scott's mental capacity; one in January 2017 and another in January 2018.  (ECF No. 11, PageID #1076–78 & 1405–07.)  In support of his 2017 report, Rubin referenced Mr. Scott's "major depressive disorder, severe, with psychotic features, post traumatic stress disorder."  (*Id.*, PageID #1078.)  In support of his 2018 report, he stated: "Patient diagnoses of major depressive disorder and post traumatic stress disorder, impasse ability to concentrate and remember work tasks, and difficult to sustain the full work day."  (*Id.*, PageID #1407.)

The ALJ assigned partial weight to Rubin's 2017 and 2018 opinions, noting that "he is not an acceptable medical source" and that "his opinions consist of

conclusory statements on a checkbox form with poorly defined limitations and/or without any citation to objective evidence." (*Id.*, PageID #85.)

### B.3.    State Psychological Consultants, Drs. Malloy and Zeune

The ALJ gave "great weight to the December 2016 and October 2016 opinions of State agency psychological consultants, Drs. Kathleen Malloy, Ph.D. and Courtney Zeune, Psy.D. (ECF No. 11, PageID #84.) Drs. Malloy and Zeune adopted the prior ALJ's residual functional capacity assessment. (*Id.*, PageID #155 & 178.) The ALJ noted that neither State reviewer examined Mr. Scott nor had opportunity to review the evidence in the case, but found "their opinions are consistent with the record" and provided several specific examples of consistency. (*Id.*, PageID #84.)

### C.    The Report and Recommendation

The Appeals Council declined further review, rendering the ALJ's decision final on September 19, 2019. (ECF No. 11, PageID # 57.) On October 15, 2019, Mr. Scott timely filed this action, challenging the Commissioner's final decision. (ECF No. 1.) He raised three issues on appeal from the ALJ's decision: (1) the ALJ erred in weighing the opinion evidence and in failing to identify which parts of the opinions of which providers were given weight; (2) the ALJ's assignment of Plaintiff's residual functional capacity was not supported by substantial evidence; and (3) the ALJ erred in finding that carpal tunnel syndrome and left shoulder rotator cuff tendinopathy are not severe impairments at step two of the evaluation process. (ECF No. 15-1, PageID #1444.)

The Magistrate Judge considered the case and entered his Report and Recommendation that the Court vacate the ALJ's decision denying Mr. Scott's

application for SSI and remanding for further consideration.  (ECF No. 18.)  To the first issue, the Magistrate Judge recommends remand, finding the ALJ's decision failed to set forth "good reasons" for discounting the functional capacity assessment completed by Drs. Morton and Dancy, as well as Counselor Rubin's mental capacity assessment.  (ECF No. 18, PageID #1524.)  The Magistrate Judge also agreed with Mr. Scott that the ALJ should further explain on remand why she gave the State reviewers' opinions great weight where neither explained why they adopted the prior ALJ's determination and did not have the opportunity to review evidence from after the 2015 determination.  (*Id.*, PageID #1523–24.)

As for the second issue, the Magistrate Judge recommends remand to allow the ALJ to clarify why the new limitations—cane required for ambulation, carpal tunnel syndrome in right wrist, and left shoulder rotator cuff tendinopathy—resulted in the same limitations found in the prior ALJ's RFC determination, which, again, noted the limitation that Mr. Scott requires a cane for ambulation.  (*Id.*, PageID #1527.)

On the third issue, the Magistrate Judge acknowledges that the reasoning underlying the ALJ's finding that carpal tunnel syndrome and left shoulder rotator cuff tendinopathy are not severe impairments is clear.  (*Id.*, PageID #1530.)  The Magistrate Judge suggests, however, that remand is necessary for the ALJ to clarify the basis for finding that the additional non-severe impairments did not affect the RFC.  (*Id.*, PageID #1531.)

### D.    The Commissioner's Objections

The Commissioner timely objected to the Report and Recommendation, arguing that remand is not necessary.  (ECF No. 19.)  First, the Commissioner argues the ALJ need not clarify whether she considered Drs. Morton and Dancy as treating sources because she addressed the factors that correspond to the treating sources analysis and because the record does not demonstrate either doctor qualified for treating physician status.  (ECF No. 19, PageID #1533.)  The Commissioner also objects that the Magistrate Judge should not have found error in the ALJ's evaluation of the opinion evidence because the ALJ clearly articulated sufficient reasons for the weight she assigned.  (*Id.*, PageID #1534.)  Finally, the Commissioner argues the ALJ's RFC was supported by substantial evidence.  (*Id.*, PageID #1535.)

## ANALYSIS

When reviewing a report and recommendation, the Court conducts a de novo review of the portions to which there are objections.  28 U.S.C. § 636(b); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  "Objections must be specific, not general" and should direct the Court's attention to a particular dispute.  *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Thomas v. Arn*, 474 U.S. 140, 147 (1985) ("The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.").

De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation.  28 U.S.C. § 636(b).  Where a party properly objects,

9

review of an ALJ's decision is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Commissioner of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see* 42 U.S.C. § 405(g). Substantial evidence is greater than a mere scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence would lead a reasonable mind to accept the evidence of record as adequate to support a conclusion. *Id.* at 241. Where substantial evidence supports the Commissioner's decision, it must be affirmed—even if the Court might have resolved the question differently. *Id.*

Generally, if the ALJ erred by applying an improper legal standard, the Court will not uphold that decision unless the error is harmless. *See Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). An error that does not "affect the substantial rights of the parties" is harmless. 28 U.S.C. § 2111. Further, "[w]hile it may be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Commissioner of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Def. Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)). Administrative law judges also need not "discuss each piece of data in [their] opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Commissioner of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky*, 167 F. App'x at 507–08).

# I.    Opinion Evidence

Mr. Scott asserted, and the Magistrate Judge agreed, that the ALJ erred in weighing the two opinions from Drs. Morton and Dancy and the mental capacity assessments of Counselor Rubin and State psychological consultants Drs. Malloy and Zeune.  The Commissioner objects.

## I.A.  Drs. Morton's and Dancy's Opinions

Dr. Morton submitted a functional capacity assessment of Mr. Scott in March 2016.  In February 2017, Drs. Dancy and Morton jointly submitted a second functional capacity assessment.  Regarding the weight given to Drs. Morton's and Dancy's opinions, the Magistrate Judge recommends remand to (1) "give the ALJ the opportunity to clarify whether Dr. Morton and Dr. Dancy were treating sources at the time of either opinion," (2) "reconsider the second opinion in light of the fact it is jointly authored," and (3) "clarify which portions of the opinions she gives partial weight, and the portions of the opinions she is rejecting, and clearly state the basis for that decision."  (ECF No. 18, PageID #1521.)

### I.A.1. Treating Physician Sources

Before deciding whether the ALJ failed to properly weigh their opinions, the Court first must determine whether Drs. Morton and Dancy are treating physician sources.  *Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  Whether the medical source in question is a treating source is a question of law reviewed *de novo*.  *Id*.  "[A]ny fact found by the ALJ bearing on this question, however, must be accepted if it is supported by substantial evidence."  *Id*. (citing 42 U.S.C. § 405(g)).  It is undisputed that the ALJ did not make factual findings regarding

11

whether Drs. Morton and Dancy were treating sources, although her written decision follows the treating sources framework.

Treating physician status is measured at the time the physician's opinion is rendered. *Kornecky*, 167 F. App'x at 506. Whether a physician might have become a treating physician in the future is not relevant to the inquiry. *Id.* "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith*, 482 F.3d at 876 (quoting 20 C.F.R. § 404.1502); s*ee also* 20 C.F.R. § 404.1527(a)(2). "A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" *Smith*, 482 F.3d at 876 (quoting 20 C.F.R. § 404.1502). Examining a claimant once does not constitute an ongoing treatment relationship. *Id.* Sometimes, even a second visit will "often not suffice for an ongoing treatment relationship." *Kornecky*, 167 F. App'x at 507.

The Commissioner draws the Court's attention to the dearth of treatment by both physicians. Having reviewed the record, the Court determines, as a matter of law, that Drs. Morton and Dancy are not treating sources. Dr. Morton examined Mr. Scott one time before issuing his report in March 2015. Dr. Dancy examined him once before issuing his report in February 2017. It is possible Dr. Morton examined Mr. Scott a second time in connection with the jointly-authored February 2017 report, but given the continuous nature of Mr. Scott's physical condition and the absence of

an ongoing relationship between him and the two physicians, the Court cannot afford treating physician status to Drs. Morton or Dancy.

### I.A.2. Reasons for the Weight Given to Opinions

The Magistrate Judge also recommends remand to give the ALJ the opportunity to reconsider Dr. Dancy's opinion as jointly authored and clarify which portions of the opinions she gave partial weight, which she rejected, and why. (ECF No. 18, PageID #1521.)  This finding implicates what is known as the "treating physician rule" in 20 C.F.R. § 404.1527.  As the Report and Recommendation notes, revised versions of these regulations, which repealed the treating physician rule, took effect on March 27, 2017.  82 Fed. Reg. 5844 (2017).  This case, however, was filed June 29, 2016, so the rules in effect on that date apply.

The former rule requires the ALJ to provide "good reasons" for what weight she gave the claimant's treating source opinions.  20 C.F.R. § 404.1527(d)(2).  The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quotation omitted).  The ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Id.* at 243 (citing *Wilson*, 378 F.3d at 544).

But the "good reasons" requirement does not extend to the opinions of non-treating sources.  *See Smith*, 482 F.3d at 876 (holding the ALJ must give good reasons

"for only treating sources").  Accordingly, because Drs. Morton and Dancy are not treating physicians, the ALJ was not required to give controlling weight to their opinions or provide good reasons for assigning partial weight.  *Id.* ("In the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports.").  Therefore, the Court concludes that the ALJ was not required to provide good reasons for giving partial weight to the opinions of Drs. Morton and Dancy.

Because these physicians do not have the status of treating physicians, the ALJ was only required to "say enough to allow the appellate court to trace the path of [the ALJ's] reasoning." *Stacey v. Commissioner of Soc. Sec.,* 451 F. App'x 517, 519 (6th Cir. 2011).  The ALJ provided sufficient reasons to inform Mr. Scott about the disposition of his case and allow for meaningful appellate review.  The ALJ's discussion of Drs. Morton's and Dancy's opinions gave specific examples explaining why she considered the opinions to be internally inconsistent and unsupported by objective evidence.  (ECF No. 11, PageID #83.)  Because remand on this issue would serve no function, the Court declines to remand for further discussion or clarification of the weight given to Drs. Morton's and Dancy's opinions.  *Wilson*, 378 F.3d at 547 (noting that "where remand would be an idle and useless formality, courts are not required to convert judicial review or agency action into a ping pong game").

Moreover, indirectly attacking the supportability or consistency of an opinion as a whole is grounds for rejecting a treating source opinion.  *See Thaxton v. Commissioner of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) ("[T]he AlJ's decision,

14

at the very least, must implicitly provide sufficient reasons for giving less weight to treating-source opinions; merely indicating a rejection . . . is not enough."); *Hall v. Commissioner of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (reviewing whether ALJ implicitly provided sufficient reasons for rejecting a medical opinion). Here, the ALJ's evaluation of Mr. Scott's physical impairments, at the least, indirectly attacks the supportability of Drs. Morton and Dancy's opinions and directly attacks their consistency. The ALJ provided sufficient reasons for assigning partial weight to Drs. Morton's and Dancy's opinions. For example, as to internal inconsistency, the ALJ explained:

> Dr. Morton's examination notes accompanying his March 2015 opinion indicated that the claimant was able to ambulate without devices. Further, both doctors opined that the claimant could work at a sedentary level, but gave limitations for work activity less than a full range of sedentary exertion level.

(ECF No. 11, PageID #83.)

As for supportability, the ALJ found that although cane use, as Dr. Dancy opined, is generally consistent with Mr. Scott's self-reporting, the record otherwise failed to reflect that he was so limited. (*Id.*, PageID #83.) The ALJ then provided specific reasons why Drs. Morton and Dancy's opinion are unsupported by the record as whole by pointing out that the record otherwise revealed normal strength, intact sensation, symmetrical reflexes, and no noted motor deficits. (*Id.*, PageID #83.) Further, as the Commissioner points out, Dr. Morton's examination noted that Mr. Scott could ambulate without assistive devices. (*Id.*, PageID #351.)

15

### I.B.    Counselor Rubin's Opinions

Rubin treated Mr. Scott in individual and group therapy.  The Magistrate Judge concludes that the ALJ failed to "provide enough detail" for why she assigned partial weight to Rubin's January 2017 and January 2018 opinions.  (ECF No. 18, PageID #1523.)  The Commissioner objects, arguing the ALJ articulated good reasons for assigning Rubin's opinions partial weight.  (ECF No. 19, PageID #1534.)  In support, the Commissioner argues Rubin is not an acceptable medical source under the regulations and that the ALJ found the State reviewing psychologists' opinions more consistent with other evidence in the record than Rubin's opinions.  (*Id.*)

The parties agree Counselor Rubin is a nonmedical source.  When evaluating opinions from nonmedical source, the ALJ should consider "[1] how long the source has known the individual, [2]how frequently the source has seen the individual, [3] how consistent the opinion of the source is with other evidence, and [4] how well the source explains the opinion."  *Cruse v. Commissioner of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1328–29 (D. Utah 2006)).

Although "therapists do not qualify as 'acceptable medical sources' under the regulations, an ALJ must consider all relevant evidence in the case record."  *Gayheart v. Commissioner of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (quotation omitted).  The ALJ should explain the weight given to other source opinion in a way that "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ."  *Id.* (citation omitted).  Indeed, the ALJ *generally should explain* the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence

in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. § 404.1527(f)(2) (emphasis added).

The ALJ seriously considered Rubin's 2017 and 2018 opinions and provided valid reasons for assigning them partial weight.  (ECF No. 11, PageID #84.)  To start, the ALJ acknowledged Rubin "would generally have knowledge of the claimant's ability to function," which demonstrates the ALJ considered his non-medical treating status and relationship to Mr. Scott.  (*Id.*)  The ALJ also found Rubin did not explain his opinions well.  Instead, she determined they were conclusory, noting they were completed using "a checkbox form with poorly defined limitations and/or without a citation to objective evidence."  (*Id.*)

The Magistrate Judge found the ALJ's use of the phrase "and/or" to be "puzzling."  (ECF No. 18, PageID #1523.)  While the term can cause uncertainty, it generally means "one, the other, or both."  The ALJ's use of "and/or" indicates that some items on the checkbox form had both poorly defined limitations and no citation to objective evidence while other items exhibited one deficiency or the other. Regardless, the ALJ's use of "and/or" does not demonstrate that she failed to consider Rubin's opinions or sufficiently explain why she did not give them full weight.  If anything, it suggests the opposite.

As discussed, the regulations direct an ALJ to consider nonmedical opinions using the same factors for medical sources.  20 C.F.R. § 404.1527(f)(1).  Under those factors, the "better an explanation a source provides for a medical opinion, the more

weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Mr. Scott and the Magistrate Judge note that Rubin provided treatment records in support of his check-box conclusions, but no one, including Rubin, cited specific evidence that supports his conclusions. (ECF No. 15-1, PageID #146263; ECF No. 18, PageID #1523.) "The Sixth Circuit is in agreement with several other circuits in finding that an ALJ 'may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings. . . ." *Murray v. Commissioner of Soc. Sec.*, No. 1:16-cv-2129, 2017 U.S. Dist. LEXIS 95828, at *30 (N.D. Ohio May 30, 2017) (quoting *Ellars v. Commissioner of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th Cir. 2016)). Accordingly, the Court will not remand on this basis. *See Johnson v. Commissioner of Soc. Sec.*, 2018 WL 3632226, at *5 (N.D. Ohio July 31, 2018) (rejecting claimant's argument that therapist's "check the box" form had a basis in the records and notes where his brief did not cite evidence to support his contention); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995) (permissible to reject psychological evaluations that "were check-off reports that did not contain any explanation of the bases of their conclusions").

## I.C.  State Psychologists' Opinions

A last issue this objection raises relates to the ALJ's treatment of the opinions of two State psychologists. The prior ALJ's decision denying Mr. Scott's first application for benefits is dated May 29, 2015. (ECF No. 11, PageID #201.) In this case, the ALJ issued a decision on October 26, 2018. The State reviewers adopted the prior ALJ's assessment of residual functional capacity without having had the opportunity to review the evidence received at the hearing currently at issue. The

ALJ gave "great weight" to the State reviewers' opinions regardless.  (*Id.*, PageID #84.)

The Magistrate Judge focuses on the fact that the State psychologists did not have access to the entire record before adopting the findings of the ALJ in the first application.  (ECF No. 18, PageID #1523–24.)  The Report and Recommendation describes the ALJ's decision to give the opinions great weight as "counterintuitive" because Mr. Scott underwent additional therapy after the first ALJ's ruling in 2015. (*Id.*, PageID #1524.)  Presumably, his functional capacity could not have stayed the same between the first and second social security benefits applications.  (*Id.*)  The Commissioner objects, relying on *Kelly v. Commissioner of Social Security*, 314 F. App'x 827, 831 (6th Cir. 2009).  In *Kelly*, the Sixth Circuit acknowledged that "there will always be a gap between the time the agency experts review the record and . . . the time the hearing decision is issued."  *Id.*  Further, there is no "blanket prohibition" on an ALJ adopting a non-examining source opinion, where "that source has not reviewed the entire record."  *Kepke v. Commissioner of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).  Instead, the ALJ must give "some indication" that she "at least considered" that the source in question did not review the entire record, thereby subjecting that opinion to scrutiny.  *Id.*  Here, the ALJ's decision indicates she subjected the State reviewers' opinions to scrutiny:

> The undersigned gives great weight to the December 2016 and October 2016 opinions of State agency physiological consultants, Drs. Kathleen Malloy, Ph.D., and Courtney Zeune, Psy.D.  (Exhibits B1A;B2A; B4A). They adopted the prior ALJ's residual functional capacity assessment. Neither consultant examined the claimant or had an opportunity to

review the evidence received at the hearing level.  However, their opinions are consistent with the record.

(ECF No. 11, PageID #84.)

The ALJ goes on to give several specific examples of how their opinions are consistent with record.  (*Id.*)  These facts sufficiently satisfy the "some indication" standard set out in *Kepke* and show the "ALJ considered the nature of the non-examining source opinions and subjected them to scrutiny."  *Kepke*, 636 F. App'x 632–33.  The Court need not remand for a more thorough explanation.

## II.     Substantial Evidence for RFC Determination

The Commissioner's second objection relates to the Magistrate Judge's determination that remand is necessary to clarify the ALJ's determination of residual functional capacity.  (ECF No. 19, PageID #1535; ECF No. 18, PageID #1527.)  The Commissioner argues that substantial supports the RFC determination.  (ECF No. 19, PageID #1535.)  Between Mr. Scott's first and second applications, Mr. Scott developed the need for a cane, carpal tunnel syndrome in his right wrist, and left shoulder rotator cuff tendinopathy.  Apart from noting that Mr. Scott now requires a cane for ambulation, the ALJ otherwise adopted the prior ALJ's RFC.  (ECF No. 11, PageID #78 & 191.)

The Magistrate Judge suggests remand for the ALJ to "clarify the reasoning behind her determination that neither the new limitation of requiring a cane for ambulation, nor her recognition that Scott had additional non-severe impairments, changed the limitations found in the prior ALJ's RFC determination."  (ECF No. 18, PageID #1527.)  The Magistrate Judge concluded that requiring the ALJ to clarify

the reasons underlying her treatment of the opinion evidence will also clarify the alleged issue with the residual functional capacity determination.  Having found that the ALJ did not err in reviewing the opinion evidence, the Court considers whether the ALJ erred by failing to explain why the new limitations did not impact the RFC determination.

"The RFC assessment must be based on *all* of the relevant evidence in the case record . . . ."  Titles II & XVI:  Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, at *5 (S.S.A. July 2, 1996).  The ALJ must consider all limitations, both severe and non-severe.  *Id.*  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ."  *Id.* at *7.  There is no indication the ALJ failed to consider Mr. Scott's required use of a cane, carpal tunnel syndrome, or tendinopathy.  The Court finds that substantial evidence directly supports the ALJ's finding that Mr. Scott's requiring a cane did not require a change in the RFC.

Regarding the cane use, the record did not reflect Mr. Scott was as limited as Drs. Morton and Dancy opined.  (ECF No. 19, PageID #1522.)  Dr. Morton noted that Mr. Scott could walk without assistive devices.  (ECF No. 11, PageID #84 & 351.)  The ALJ acknowledged the medical evidence of an antalgic gait and cane use (*id.*, PageID #80), but noted other medical evidence that revealed no joint instability, "full ranges of back motion, 'nearly full' ranges of lower extremity motion, symmetrical reflexes, normal fine motor coordination, normal strength, normal sensation, a normal gait . . . and/or no noted motor, strength, sensory, or gait deficits or abnormalities"

21

(*id.*).  Further, Mr. Scott testified, as the ALJ noted, that he had "no need to use [a cane] every time" and he did chores, would be able to drive if he had a license, and can otherwise use public transportation.  (*Id.*, PageID #82 & 99–102.)  Accordingly, the ALJ provided some basis for her conclusion that Mr. Scott's "actions and admissions reveal that he is not as limited as he alleged from a physical or mental health standpoint" and that the new cane limitation did not require additional functional limitations in the RFC.  (*Id.*, PageID #82.)

As for carpal tunnel syndrome and tendinopathy, the ALJ explained the basis for her conclusion that the non-severe impairments did not impact the RFC, writing "the record failed to reveal an aggressive course of treatment for any alleged physical condition since the application date."  (*Id.*, PageID #83–84.)  She therefore acknowledged the limitations in the RFC and provided some explanation why they did not account for additional functional limitations.

Further, the ALJ incorporated her step-two findings in the explanation of the RFC.  (*Id.*, PageID #80.)  In step two, the ALJ acknowledged that x-rays revealed evidence consistent with rotator cuff tendinopathy and an electromyogram suggested "mild" right carpal tunnel syndrome.  (*Id.*, PageID #73.)  She noted the electromyogram did not show evidence of "ongoing nerve fiber loss."  (*Id.*)  Consistent with her RFC analysis, she also noted that "the record failed to reveal an aggressive course of treatment for these conditions."  (*Id.*)  She described both limitations as mild or transient and well-controlled with treatment.  (*Id.*)  Additionally, the ALJ noted that "exams in the treatment records otherwise failed to reveal any motor, strength,

22

sensory, or right wrist/left shoulder use deficits or abnormalities." (ECF No. 11, PageID #72.) Accordingly, she concluded the impairments "do not more than minimally limit the claimant's ability to engage in work-related activities." (*Id.*)

In sum, the ALJ acknowledged the lack of substantial effect both conditions had on Mr. Scott's ability to engage in work-related activities and provided sufficient reasons to ensure Mr. Scott understands the disposition of his case. Therefore, substantial evidence and clear reasoning support the determination of RFC, and remand is not required.

## III. Carpal Tunnel Syndrome and Left Shoulder Rotator Cuff Tendinopathy as Severe Impairments

Although the Commissioner does not expressly object to the Magistrate Judge's conclusion regarding the third and final error Mr. Scott raised, the Court will briefly review the error as part of its de novo review. This can be done in short order because the third issue is intertwined with those already discussed. Mr. Scott asserted the ALJ erred in finding that carpal tunnel syndrome and left shoulder rotator cuff tendinopathy are not severe impairments at step two of the evaluation process under 20 C.F.R. § 416.920(c). The Magistrate Judge found the ALJ did not err in explaining why carpal tunnel syndrome and left shoulder rotator cuff tendinopathy are non-severe impairments. (ECF No. 18, PageID #1531.) The Report and Recommendation, however, suggests remand to give the ALJ the opportunity to clarify why the additional non-severe impairments did not affect the RFC. The Court disagrees for the reasons already discussed.

## CONCLUSION

The Court **SUSTAINS** the Commissioner's objections, **VACATES** the Report

and Recommendation, and **AFFIRMS** the Commissioner's denial of benefits.

**SO ORDERED.**

Dated:  May 14, 2021

_____
          J. Philip Calabrese
          United States District Judge
          Northern District of Ohio